**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Monte Connors, et al., | No. CV-25-02318-PHX-ROS |
| Plaintiffs, | **ORDER** |
| v. | |
| True Blue Car Wash LLC, | |
| Defendant. | |

Before the Court is Defendant True Blue Car Wash LLC's Motion to Compel Arbitration and Strike Class Allegations; or in the Alternative to Dismiss Count III. (Doc. 17.) Plaintiffs filed a Response, (Doc. 22), and Defendant filed a Reply, (Doc. 26).

For the reasons that follow, the Court will dismiss Count Three but deny Defendant's requests to compel arbitration and strike Plaintiffs' class allegations.

## I.    BACKGROUND

Plaintiffs Monte Connors, Dominque Dean, Melissa Millsaps, and Raja Bellani brought this lawsuit individually and on behalf of a putative class of customers who purchased car wash memberships from Defendant True Blue Car Wash LLC. Defendant owns and operates over 70 car wash locations across four states, operating under the name Rainstorm Car Wash in Illinois and Indiana, and under the name Clean Freak Car Wash in Texas and Arizona. (Doc. 1 ¶¶ 29–31.) In 2022, more than 170,000 individuals were subscribers to Defendant's membership program, which provides unlimited car washes for a monthly fee. (*Id.* ¶¶ 25, 28.) Plaintiffs allege Defendant's practices related to its car wash

memberships, including unauthorized renewals and improper billing, violated multiple state consumer fraud statutes and resulted in Defendant's unjust enrichment.

Customers can enroll in a car wash membership either online through Defendant's websites or in person at any of Defendant's car wash locations. (*Id.* ¶ 34.) The four named Plaintiffs[1] each enrolled in Defendant's membership program in person at a car wash location. (*Id.* ¶¶ 70, 89, 104, 123.) Defendant alleges—and Plaintiffs dispute—that upon enrolling, Plaintiffs were informed of how the membership works and were provided with a receipt containing a link to the terms and conditions ("T&C") governing Defendant's membership program. (Doc. 17-1 ¶¶ 6, 10, 16, 19.) In relevant part, Defendant's T&C contains a mandatory arbitration provision and a class action waiver. (*Id.* at 17–18, 34–35.) Because the named Plaintiffs allegedly agreed to the T&C when enrolling in Defendant's car wash membership, Defendant argues that Plaintiffs are compelled to arbitrate their claims and that Plaintiffs' class claims must be stricken. (*See* Doc. 17.)

## II.   LEGAL STANDARD

### A. Standard to Compel Arbitration

Under the Federal Arbitration Act ("FAA"), "[a] written provision . . . in a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2.

"Notwithstanding the federal policy favoring it, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Tracer Rsch. Corp. v. Nat'l Env't Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960)). In determining whether to compel arbitration, a court must determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119

---

[1] Plaintiff Dean specifically alleges that she "intended to purchase a single car wash from Defendant, but instead [s]he was signed up for an automatically renewing membership." (Doc. 1 ¶ 89.)

(9th Cir. 2008). The validity of an agreement to arbitrate is governed by the state law applicable to the agreement. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

The party seeking to compel arbitration bears the burden of proving the existence of an agreement to arbitrate. *Johnson v. Walmart, Inc.*, 57 F.4th 677, 681 (9th Cir. 2023). When "the making of the arbitration agreement" is at issue, the summary judgment standard applies. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (quoting 9 U.S.C. § 4) ("The summary judgment standard is appropriate because the district court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.") To prevail, the party seeking to compel arbitration must show there is no genuine issue of material fact as to whether a valid agreement to arbitrate was formed. *Id.* "Conversely, to deny the motion to compel arbitration, rather than hold a trial on arbitration agreement formation, the Court must find no reasonable trier of fact could find an agreement was made." *Singh v. Adobe Inc.*, 797 F. Supp. 3d 1038, 1044 (N.D. Cal. 2025) (citing *Hansen*, 1 F.4th at 670); *see also Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1015 (9th Cir. 2024) (noting that where the authenticity of the evidence "is not subject to factual dispute, courts may decide the issue of constructive notice as a pure question of law" (citation modified)).

**B.  Standard to Strike Class Allegations**

Under Rule 12(f) of the Federal Rules of Civil Procedure, a "court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." A motion to strike under Rule 12(f), though "generally disfavored, . . . may be granted where necessary to spare the parties the time and expense associated with 'litigating spurious issues.'" *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 833 (D. Ariz. 2016) (quoting *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983)). To succeed on a motion to strike, the movant "must show that the law is clear beyond reasonable dispute and that the relevant claim or defense could not succeed under any set of circumstances." *Id.* at 834

(citing *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009)). A court considering a motion to strike must "accept the non-moving party's well-pleaded facts as true and to draw all reasonable inferences in favor of that party." *Id.* (citing *Farm Credit Bank of Spokane v. Parsons*, 758 F. Supp. 1368, 1371 n.4 (D. Mont. 1990)).

A motion to strike class allegations is "particularly disfavored because it is rarely easy to determine before discovery whether the allegations are meritorious." *Id.*; *see Baughman v. Roadrunner Commc'ns, LLC*, No. CV-12-565-PHX-SMM, 2013 WL 4230819, at *2 (D. Ariz. Aug. 13, 2013) ("'Motions to strike class allegations are disfavored because a motion for class certification is a more appropriate vehicle'" in which to consider the issue." (quoting *Thorpe v. Abbott Lab'ys, Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008))). However, "class allegations may be stricken when it is clear from the face of the complaint that no class can be certified." *Cheatham*, 161 F. Supp. 3d at 834 (citing *Baughman*, 2013 WL 4230819, at *2).

**C. Standard to Dismiss for Failure to State a Claim**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint" has not adequately shown the pleader is entitled to relief. *Id.* at 679. Although federal courts ruling on a Motion to Dismiss "must take all of the factual allegations in the complaint as true," they "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

**III.    ANALYSIS**

**A. Motion to Compel Arbitration**

The first issue is which state's law governs the validity of the arbitration agreement.

- 4 -

Defendant asserts that Delaware law applies, as the T&C contains a Delaware Choice of Law provision. (Doc. 17 at 9.) Plaintiffs argue that Arizona law applies because "Defendant has provided no evidence whatsoever that Plaintiffs actually agreed to its T&C, let alone to the Choice of Law provision in the T&C." (Doc. 22 at 8–9.)

A choice of law provision in an agreement has no effect until it is determined as a matter of law that a valid agreement was formed. *See Trans-Tec Asia v. M/V Harmony Container*, 518 F.3d 1120, 1124 (9th Cir. 2008); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). Thus, the Court applies "the choice-of-law rules of the forum state," which is Arizona, to determine the validity of the arbitration agreement. *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010). "Arizona follows the choice of law principles identified in the Restatement (Second) Conflict of Laws." *Starr Indem. & Liab. Co. v. Rolls-Royce Corp.*, 725 F. App'x 592, 593 (9th Cir. 2018) (citing *Bates v. Superior Ct.*, 749 P.2d 1367, 1369 (Ariz. 1988) (en banc)). In determining the applicable law, considerations include (1) "the place where the injury occurred," (2) "the place where the conduct causing the injury occurred," (3) "the domicil, residence, nationality, place of incorporation and place of business of the parties," and (4) "the place where the relationship, if any, between the parties is centered." Restatement (Second) Conflict of Laws § 145(2) (A.L.I. 1971). Here, Plaintiffs purchased their memberships and were injured in Illinois, Indiana, and Texas, so the first, third, and fourth factors could suggest any one of these state's laws applies. As to the third factor, Plaintiffs are residents of Illinois, Indiana, and Texas, while Defendant is incorporated in Delaware and has its principal place of business—its headquarters—in Arizona. Given that the Plaintiffs were injured in different states, the Court will apply Arizona law as the state where Defendant is headquartered and operates some of its car washes. *See id.* § 145 cmt. e ("[W]ith respect to most issues, a corporation's principal place of business is a more important contact than the place of incorporation, and this is particularly true in situations where the corporation does little, or no, business in the latter place.").

- 5 -

Under Arizona law, a valid contract requires mutual assent or intent to be bound by all material terms. *Schade v. Diethrich*, 760 P.2d 1050, 1058 (Ariz. 1988) (en banc); *Hill-Shafer P'ship v Chilson Family Trust*, 799 P.2d 810, 814 (Ariz. 1990) (en banc) ("It is well-established that before a binding contract is formed, the parties must mutually consent to all material terms. A distinct intent common to both parties must exist without doubt or difference, and until all understand alike there can be no assent."). Thus, for Plaintiffs to be bound by the arbitration provision in the T&C, Defendant bears the burden of showing Plaintiffs were given sufficient notice[2] of the T&C and manifested assent to the T&C by purchasing a car wash membership.

Here, Defendant asserts that Plaintiffs were provided a paper receipt after purchase that allegedly contains a link to the T&C on Defendant's website and informs customers that enrolling in the membership plan manifests assent to the T&C and the arbitration provision therein. Although the Declaration from Steve Jones ("Jones Declaration"), Defendant's Regional Director of Operations, contends that Plaintiffs each received conspicuous notice of the T&C, the attached exhibits contradict this assertion. (*See* Doc. 17-1.)

First, there is no admissible evidence establishing that Plaintiffs received these receipts. The Court will assume hypothetically Defendant could proffer admissible business records or other evidence authenticating these receipts for each of Plaintiffs' transactions. But even if the receipts were in fact generated after each Plaintiff's purchase, there is no admissible evidence that Plaintiffs received these receipts and thus received notice of the T&C. None of the receipts bear a signature or other mark[3] confirming that

---

[2] Defendant does not assert that Plaintiffs had actual notice—that is, that Plaintiffs read and understood the arbitration provision. Thus, Defendants must show that Plaintiffs had constructive notice because they were aware of the existence of the T&C made available on Defendant's website and understood that their purchase and use of the car wash membership constituted assent to the T&C, regardless of whether Plaintiffs ever read the T&C. *See generally Main I Ltd. P'ship v. Venture Capital Constr. & Dev. Corp.*, 741 P.2d 1234, 1237 (Ariz. Ct. App. 1987) ("'Constructive notice' is neither notice nor knowledge but is a policy determination that under certain circumstances a person should be treated as if he had actual notice.").

[3] For example, the following language appears at the bottom of two of the receipts: "Please verify or complete the following vehicle and contact information." (Doc. 17-1 at 40, 45.) Had there been some evidence—which there is not—confirming Plaintiffs verified or

Plaintiffs received them. And unlike in the online context where notice of T&C can be a permanent and unavoidable feature of the webpage, notice of T&C provided on a printed receipt post-purchase may not have been provided to the customer on every occasion or could simply be thrown away—by the customer or the cashier—without the customer ever receiving sufficient notice. *Cf. United States v. Watson*, 611 F. App'x 647, 659 (11th Cir. 2015) ("It is not unusual for people to discard receipts—think of trips to the ATM or gas station where one instinctively hits 'No' to the prompt 'Would you like your receipt?'").

Additionally, and contrary to Defendant's assertion, there is no evidence that Plaintiffs were informed of the T&C "at the time of signup." (Doc. 26 at 6.) Rather, Plaintiffs were allegedly provided with a receipt only *after* purchasing a membership that purported to bind them to the T&C: "By enrolling in your automatic recharge plan you are agreeing to the terms found at rainstormcarwash.com/terms-and-conditions/."[4] (Doc. 17-1 at 40, 45.) The law provides that post-purchase disclosure of T&C in this manner is generally not sufficient to bind customers to T&C. *See, e.g.*, *Seneca v. Homeaglow, Inc.*, No. 8:23-cv-02308-CJC-ADS, 2024 WL 750029, at *4 (C.D. Cal. Feb. 7, 2024), *aff'd*, No. 24-887, 2025 WL 852896 (9th Cir. Mar. 19, 2025) (finding T&C were not presented in a reasonably conspicuous manner because a consumer "would have no reason to expect the post-hoc imposition of terms and conditions to the previous purchase of the cleaning voucher and automatically renewing membership" when the consumer is "not purchasing anything further" but "merely scheduling a cleaning they've already purchased"). And the receipt contains no mention or even a hint in the reference to T&C that consumers are agreeing to compelled arbitration. Only once a consumer returns home, accesses the internet through a computer or other device—assuming they have one—and reads the T&C could they finally learn of the arbitration provision. But even if consumers then objected to compelled arbitration and cancelled their membership, they have already paid for a

---

completed the information as requested, this might be sufficient to show Plaintiffs received the receipt.

[4] The receipt attached as Exhibit D to the Jones Declaration merely stated "Terms and conditions can be found at Rainstormcarwash.com. (Doc. 17-1 at 47.) The receipt attached as Exhibit E lacks any reference or link to the T&C. (*Id.* at 49.)

month of car washes, and Defendant would seemingly argue that consumers are still compelled to arbitrate any claims arising out of that first month.

Moreover, the T&C notice was inconspicuous among the other text on the receipt. It was Defendant's burden to provide "notice of the terms to which they wish to bind consumers," *Nguyen*, 763 F.3d at 1179, and the T&C notice on the receipt was not prominently and conspicuously set off from the surrounding text in a manner that would provide a reasonably prudent customer notice of the T&C. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022) (noting consumers "are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print"); *see also, e.g.*, *Broomes v. FullBeauty Brands Operations, LLC*, No. 24-cv-03558-RFL, 2025 WL 3548680, at *3 (N.D. Cal. Dec. 11, 2025) (notice was inconspicuous because it lacked "underlines, capitalizations, size, or font differences").

Lastly, "each Plaintiff has executed a declaration stating they were never shown any disclosures related to the terms of the arbitration agreement and never received or signed any receipts at the time of purchase." (Doc. 22 at 15; *see* Docs. 23-1 to -3.) It may very well be that Defendant's "standard protocol" is to provide customers notice of the T&C through "both receipts and follow-up emails." (*See* Doc. 26 at 7.) But this assertion does little to prove, as a matter of law, that these particular Plaintiffs in fact received notice of the T&C through receipts and follow-up emails. Indeed, even assuming each Plaintiff received both a receipt and an email, some of the proffered receipts lack any notice that the customer's purchase constitutes assent to the T&C.[5] And Mr. Connors is the only Plaintiff for whom Defendant provides any proof that he received follow-up emails; but despite including information on how to cancel a membership, these emails make no mention of the T&C whatsoever. (*See* Doc. 17-1 at 42–43.) Even if the Court were to take every

---

[5] Two of the receipts allegedly containing a link to the T&C clearly do not, in fact, contain any such link. The receipt attached as Exhibit D of the Jones Declaration merely provides a link to Rainstorm Car Wash's homepage, stating the T&C "can be found at Rainstormcarwash.com." (Doc. 17-1 at 47.) And the receipt attached as Exhibit E of the Jones Declaration contains no mention of or link to the T&C whatsoever. (*Id.* at 49.)

reasonable inference in Defendant's favor, there is simply no factual basis for Defendant to boldly assert that the T&C were "repeatedly presented" to Plaintiffs, (*see* Doc. 26 at 6), let alone presented a single time in a manner sufficient to provide Plaintiffs with constructive notice of the T&C. Defendant is arguably a sophisticated business that should have been aware of the law establishing how to provide sufficient notice of T&C to customers, and it "should not be rewarded for its failure to do what was necessary to create a binding arbitration agreement." *Wulff v. Safe-Guard Prods. Int'l LLC*, No. CV 2021-051101, 2021 Ariz. Super. LEXIS 809, at \*7 (Maricopa Cnty. Super. Ct. June 1, 2021).

As such, no reasonable trier of fact could find an agreement to arbitrate was made, and the Court will deny Defendant's request to compel arbitration. *See Singh*, 797 F. Supp. 3d at 1044.

### B. Motion to Strike Class Allegations

Defendant moves to strike the class claims on two grounds. First, Defendant asserts the class claims are subject to a class waiver in the T&C. (Doc. 17 at 12.) This argument fails because, as previously discussed, no reasonable trier of fact could find Plaintiffs had notice of and assented to the T&C, so Plaintiffs are not bound by the class waiver.

Second, Defendant argues that even if the class claims are not barred by the arbitration agreement, the class claims should be stricken nonetheless because they are facially deficient. (*Id.* at 12–14.)

The Complaint asserts claims on behalf of three subclasses:

Illinois Sub-Class: All persons in Illinois who, within the applicable statute of limitations period, were automatically enrolled in a Rainstorm Car Wash membership and were charged at least one renewal fee by Defendant.

Indiana Sub-Class: All persons in Indiana who, within the applicable statute of limitations period, were enrolled in a Rainstorm Car Wash membership where the price of the monthly membership was increased and/or where they were charged a membership fee after they cancelled the membership.

Texas Sub-Class: All persons in Texas who, within the applicable statute of limitations period, were enrolled in a Clean Freak Car Wash membership where the price of the monthly membership was increased and/or where they were charged a membership fee after they cancelled the membership.

(Doc. 1 ¶ 131.)

Put simply, Defendant argues the Illinois Subclass lacks numerosity, and that all three subclasses are overbroad and lack commonality, making them "insufficient for certification under Rule 23." (Doc. 17 at 14.) Defendant hereby admits their grounds for striking the class claims are more appropriately considered as grounds for denying class certification under Rule 23. "[C]ourts have held that resort to Rule 12(f) is improper 'where the issues raised in the motion to strike are the same ones that would be decided in connection with determining the appropriateness of class certification under Rules 23(a) and 23(b).'" *Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094, 1108 (D. Ariz. 2024) (quoting *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06 Civ. 6198(LAK)(JCF), 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008)); *cf. Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) ("Were we to read Rule 12(f) in a manner that allowed litigants to use it as a means to dismiss some or all of a pleading (as Handi–Craft would have us do here), we would be creating redundancies within the Federal Rules of Civil Procedure, because a Rule 12(b)(6) motion (or a motion for summary judgment at a later stage in the proceedings) already serves such a purpose.").

Thus, because it is not "clear from the face of the complaint that *no* class can be certified," *see Cheatham*, 161 F. Supp. 3d at 834 (emphasis added), striking Plaintiffs' class allegations under Rule 12(f) would be improper.

**C. Motion to Dismiss Count Three**

Defendant alternatively moves to dismiss Count Three of the Complaint as time-barred. (Doc. 17 at 14–15.) Count Three alleges violations of the Indiana Deceptive Consumer Sales Act ("IDCSA") on behalf of Plaintiff Millsaps and the Indiana Sub-Class. (Doc. 1 at 34–36.)

Plaintiffs do not contest Defendant's argument that Count Three is time-barred. (Doc. 22 at 7 n.1.) Moreover, Plaintiffs note that Millsaps "will no longer be pursuing any claims against Defendant." (*Id.* at 15 n.2.) As such, the Court will dismiss Count Three and Plaintiff Millsaps without reaching the merits of Defendant's argument.

Accordingly,

**IT IS ORDERED** Defendant True Blue Car Wash LLC's Motion to Compel Arbitration and Strike Class Allegations; or in the Alternative to Dismiss Count III (Doc. 17) is **GRANTED IN PART** as to dismissing Count Three and **DENIED IN PART** as to compelling arbitration and striking the class allegations.

**IT IS FURTHER ORDERED** Count Three of Plaintiffs' Complaint (Doc. 1) is **DISMISSED**. The Clerk of Court is hereby directed to dismiss Plaintiff Millsaps from this case.

Dated this 23rd day of April, 2026.

Honorable Roslyn O. Silver
Senior United States District Judge